UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

ABDELLAH BOUZZI, LUIS GUAMAN, RAUL
ECHEVARRIA, YOLANDA CASTRO, MARIO
RAMALEZ, GUBELKIS CASTRO, JAMIE
PAREDES, ROLANDO LIRIANO, NOE
VARGARA-CAMPOS, MILDRED SANTANA,
and OSCAR CARRANZA on behalf of themselves
individually, and on behalf of all similarly situated
employees,

       Plaintiffs,

 - against -

F & J PINE RESTAURANT, LLC, d/b/a THE
PINE RESTAURANT GROUP and/or THE PINE
RESTAURANT; THE PINE RESTAURANT
GROUP; THE PINE RESTAURANT; 4AKIDS,
LLC; A&C PINE PROPERTIES; F&J PINE
RESTAURANT; PINE RESTAURANT OF
QUEENS; CHARLES ROSE, in his official and
individual capacities; ANTHONY BASTONE, in
his official and individual capacities; and DOES 1-5
d/b/a THE PINE RESTAURANT,

       Defendants.

-------------------------------------------------------------------X

Case No. 10 CV 0457
(DLI)(CLP)

## REPLY AFFIDAVIT OF ABDELLAH BOUZZI

STATE OF NEW YORK )
         ) ss:
COUNTY OF NEW YORK )

I, Abdellah Bouzzi, hereby declare and state:

  1. I am a Plaintiff in the above-captioned matter, and submit this affidavit in further support of Plaintiffs' motion for (1) preliminary certification of a collective action pursuant to the Fair Labor Standards Act; (2) an order directing Defendants to provide

Plaintiffs with names, last known addresses, telephone numbers, email addresses, and Social Security numbers of putative collective action members; and (3) an order authorizing Plaintiffs' counsel to advise such collective action members of the pendency of this action and their opportunity to participate in it.

2. From 2003 through October 2009, I was a waiter employed at a restaurant known as The Pine Restaurant, located in Queens, New York, at 37-10 114th Street, Corona ("Pine Queens").

3. I understand that Defendants continue to assert that I was a management employee of Pine Queens. That statement remains untrue. At all times that I worked at Pine Queens and, on occasion, at Pine Bronx, I was a waiter and worked on the restaurant floor, taking food and drink orders from customers and delivering food and drinks to tables. Because of my experience and seniority, I was sometimes asked to take on administrative tasks, but I was always a waiter, and never had hiring, firing or disciplinary authority or any other authority over other employees on staff.

4. During the course of my employment, there were approximately 20 to 30 individuals employed by Pine Queens at any given time in the following positions: waiters, bartenders, barbacks, busboys, runners, dishwashers, cooks, expediters, and food preparers. Based on my own experience working briefly at Pine Bronx and on what others who worked there had told me, the same number of individuals were employed by Pine Bronx at any given time in the same or similar positions. The duties and responsibilities of the positions between both restaurant locations were the same. During the three year period prior to the filing of my Complaint, there were likely more than 100 individuals that worked at Pine Queens and/or Pine Bronx.

5. As previously stated, during my first two years at Pine Queens, I was paid, like all other non-cooking staff Plaintiffs and potential class members in this case, on a shift basis, receiving $10 or $20 per shift plus tips, except when a portion of my tips were unlawfully taken by management. After that, I was paid $100 per shift to perform additional administrative tasks for Defendant Rose in addition to my usual duties as a waiter.

6. Having worked for Defendants for approximately six years, and having worked alongside countless waiters, bartenders, barbacks, busboys, runners, dishwashers, cooks, expediters, and food preparers also employed by the Defendants, I am aware that Defendants maintained unified, common, and unlawful pay practices and policies with respect to all of their employees, whereby all non-cooking staff was paid either $10 or $20 per shift.

7. During my first two years at Pine Queens, Defendants failed to pay me and, upon information and belief, all other non-cooking staff, the appropriate minimum wage pursuant to Federal and New York law. Even after I began earning $100 per shift, Defendants continued to pay all other non-cooking staff below the appropriate minimum wage.

8. Throughout the course of my employment with the Defendants, the other employees and I were regularly required to work in excess of 40 hours per week. We were not, however, compensated for any hours in excess of 40 hours worked in a given week.

9. Throughout the course of my employment with the Defendants, the other employees and I were expected to work two main shifts: the morning shift, which ran

3

from approximately 6:00 a.m. to 3:00 p.m., or the night shift, which ran from approximately 3:00 p.m. to closing, which was usually between 1:00 a.m. and 4:00 a.m. I have learned that Defendants, in paragraph 64 of their Answer, admitted to these work schedules and hours. Moreover, the other employees and I commonly worked six shifts per week, and with some frequency worked double shifts. Despite frequently working upwards of 60 hours per week, we were never paid any additional compensation for any hours that were worked in excess of 40 in a given workweek.

10. Throughout the course of my employment, Defendants failed to accurately keep track of employees' hours, and failed to maintain accurate time records.

11. At no time did Defendants pay me or, based upon my observations and experience, any other employee of the Defendants, New York's spread-of-hours premium for shifts which were 10 hours or longer.

12. Defendants would often also unlawfully deprive me and, based upon my observations and experience, other employees of a portion of their tips.

13. Further, Defendants failed to properly compensate or reimburse me and, based upon my observations and experience, other employees for uniform expenditures.

14. Defendants never posted in any manner, much less conspicuously, information advising me and other employees of our rights as employees under the law.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Abdellah Bouzzi

Sworn to before this

21 day of March 2011

_____
Notary Public

GREGORY N. FILOSA
Notary Public, State of New York
No. 02FI6210695
Qualified in New York County
Commission Expires August 24, 20 13